[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This Memorandum deals with a Motion for Modification of Support Orders filed by the defendant on December 28, 1995. The court conducted an evidentiary hearing in regard to this motion on numerous trial dates ending on October 21, 1996. Based on the evidence adduced at the hearing, the court makes the following findings and orders.
This is a marital dissolution action commenced by complaint dated July 9, 1993 by the plaintiff Dori Ann Plante against the defendant Peter George Plante, III. The parties were married on CT Page 9901 December 12, 1981. They have two minor children, Meghan who was born on September 19, 1984, and Catherine, who was born on November 23, 1987. Both children presently reside with their mother.
On November 1, 1993 the parties entered into a pendente lite
agreement, approved by the court, in which the parties stipulated,inter alia, that commencing on November 5, 1993, the defendant would pay the plaintiff the sum of one hundred and fifty ($150) dollars a week as support. And, as additional support, the defendant would pay the mortgage, including taxes, the homeowners insurance, heating up to twenty five ($25) dollars a week, the plaintiff's car loan, and car insurance. The agreement further stipulated that the defendant would pay such support without any set-offs, except as may be allowed by the court. Finally, the agreement provided that the defendant would pay for the childrens' reasonable activities, such as girl scouts and gymnastics as appropriate. These orders were entered "without prejudice" and the motion for support was continued to November 22, 1993. With respect to medical care, the November 1, 1993 agreement provided that the defendant would maintain his existing medical, dental and life insurance for the benefit of the plaintiff and/or the children and would be responsible for all uninsured and unreimbursed medical and dental expenses of the minor children. The medical portion of the parties' agreement also required the plaintiff to utilize a certain option of the health care plan available to the parties, with the further order that the plaintiff should bear any extra costs incurred in the event she did not utilize the specified health care option.
While the parties agreed that the support orders were to be entered without prejudice and that the motion for support was to be continued until November 22, 1993, it does not appear, from a review of the court file, that there was any further court action in regard to the plaintiff's support motion on November 22, 1993.
At the time the parties' November 1, 1993 agreement was presented to and approved by the court, neither party filed a financial affidavit or a child support guideline worksheet.
On October 26, 1994, the plaintiff filed a Motion for Contempt in which she claimed, inter alia, that the defendant was in arrears with respect to the then-existing support order. Subsequently, on February 27, 1995, the parties submitted a written agreement to the court which provided for an immediate wage execution to enter against a portion of the defendant's retirement earnings. The CT Page 9902 agreement also contained provisions concerning arrearages on the November 1, 1993 court orders with the further understanding that all of the arrearage figures recited in the agreement were entered without prejudice to either party and would be subject to a later audit with credits and adjustments to be made in light of any results obtained through the anticipated audit. While it appears that the plaintiff submitted a financial affidavit, dated January 23, 1995, to the court in conjunction with this agreement, a review of the court file fails to disclose the filing of any affidavit by the defendant, in spite of the language in the parties' agreement that . . . " This shall be without prejudice pending the financial affidavit of the defendant." cf. Parties agreement, filed with the court on February 27, 1995.
The next relevant pleading in the court's file is the defendant's Motion for Modification of Support Orders dated December 26, 1995. It is this Motion to Modify which is the subject of the court's Memorandum of Decision.
The defendant's Motion to Modify incorrectly states that the present support orders were entered on February 27, 1995. Having reviewed the record of this matter, the court has determined that the February 27, 1995 orders, entered pursuant to a Motion for Contempt filed by the plaintiff, did not modify the court's prior orders, but were merely entered as a means to enforce the terms of the parties' earlier agreement dated November 1, 1993.
As a basis for his motion to modify, the defendant has alleged that the present support orders deviate from the child support guidelines by more than fifteen (15%) percent. Additionally, he claims that since the entry of the orders there has been a change of circumstances not contemplated by the parties. The defendant also asserts that since the date of the original orders the defendant has undertaken to pay one hundred (100%) percent of the fees for the attorney for the child as well as the psychological evaluation. In addition to a modification of the court's periodic orders, the defendant seeks an order requiring the plaintiff to assign to the defendant her entitlement to claim the two children as dependency exemptions, a modification of the court's existing order that the defendant be solely responsible to pay for the fees of the court-appointed counsel/guardian ad litem for the children, and a modification of the existing order that the defendant be solely responsible to pay for the future expenses of a psychologist who has been involved with the family in regard to child-access issues pending before this court. CT Page 9903
Connecticut General Statutes § 46b-86 provides, in pertinent part, that ". . . any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate." The statute further provides that ". . . There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial."
Confronted with the realization that he did not file a financial affidavit at the time of the initial pendente lite
orders, the defendant argues that the court nonetheless has the authority to modify its earlier support orders upon a finding that the existing order deviates by fifteen (15%) percent or more from the child support guidelines even if there has not been a showing of a substantial change in circumstances. Indeed, in Mullin v.Mullin, the Appellate Court opined; "The court has the power to modify a child support order on the basis of a substantial deviation from the guidelines independent of whether there has been a substantial change in the circumstances of a party." 28 Conn. App. 632
(1992). Mullin, however, was an appeal from the court's denial of a post-judgment motion for modification. Thus, it involved a modification of a final order. Under such circumstances, the court held that the trial court should have made a determination of whether the then existing order deviated from the child support guidelines regardless of whether a change in circumstances had been proven. Id. The court is unpersuaded that the reasoning of Mullin, dealing with a post judgment modification, pertains to the current circumstance in which the defendant seeks a pendente lite modification of a pre-existing pendente lite order. To equate the two circumstances would be to ignore the distinction set forth in C.G.S. § 46b-86 between modification of "any final order for the periodic payment of permanent alimony or support" and "an order for alimony or support pendente lite". While, under most circumstances, pendente lite orders are considered final for appeal purposes, the court understands that in the context of modifications, the General Assembly, in C.G.S. § 46b-86, chose to CT Page 9904 distinguish between final and pendente lite orders, stating that while either may be modified upon a showing of a substantial change in circumstances, a final order may be modified on the independent basis that it deviates by fifteen or more percent from the guidelines. Thus, the court disagrees with the defendant's assertion that he would be entitled to a pendente lite modification solely upon a finding that the present pendente lite order deviates by fifteen or more percent from the child support guidelines. The court's determination, however, is not dispositive of the motion.
At the time the present pendente lite orders were entered, the parties agreed that the orders would enter without prejudice. While the use of this problematic and often ill-advised term is not amenable to ready definition, it is the court's view, as a general matter, that orders entered without prejudice are reviewable by the court at the urging of either party. Thus, while the defendant has stylized his motion as a request to modify, under the circumstances in which the initial order was entered without prejudice, the court believes that the defendant is entitled to have the court establishpendente lite orders without the necessity of showing either a change in circumstances or the requisite deviation from the child support guidelines.
In making an order for the payment of child support, the court is required to consider the, ". . . age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child." C.G.S. § 46b-84(c). In addition, there is a rebuttable presumption that the amount of support indicated by application of the child support guidelines is the amount which the court should order when making a child support determination. cf. C.G.S. § 46b-215b; Hill v. Hill, 39 Conn. App. 258
(1995). Application of the guidelines, however, does not confine the court's attention to the actual earnings of the parties. Under proper circumstances, the court may enter orders in accordance with the parent's earning capacity instead of the parent's actual earnings. C.G.S. § 46b-215a-3 (b)(1)(B); Carey v.Carey, 29 Conn. App. 436 (1992). While such circumstances may include those in which there is evidence that a party voluntarily quit or avoided employment in his or her field of expertise and where there is evidence of that party's previous earnings, these decisional examples do not serve as limitations on the court's authority to consider a parent's earning capacity in determining a CT Page 9905 support order. cf. Miller v. Miller, 181 Conn. 610 (1980). Nor does the mere fact that a prospective payor has voluntarily retired entitle the court, for that reason only, to issue a support order on the basis of the retirees former employment income or earning capacity rather than his or her actual post-retirement income. cf.Misinonile v. Misinonile, 35 Conn. App. 228 (1994).
With this legal backdrop, the court turns to the defendant's motion.
The defendant has a Bachelor of Arts Degree from the University of Connecticut as well as a Master of Public Administration from the University of Hartford. Plaintiff's Exhibit 5, Curriculum Vitae. In 1992, he retired from the Connecticut State Police from which he presently receives an annual pension of thirty three thousand four hundred seventy four ($33,474) dollars. Since his retirement, the defendant has been self employed as a traffic accident reconstruction specialist. While the defendant provided the court with some oral testimony concerning his current case load, the court finds the best evidence of the defendant's employment earnings as an accident reconstructionist to be set forth on his 1995 Federal Income Tax Return. Defendant's Exhibit A. This document reflects that in 1995 the defendant had gross income as an accident reconstructionist of forty thousand seven hundred forty nine ($40,749) dollars. While, for tax purposes, the defendant claimed several expenses on Schedule C of his tax return, the court allows the following expenses in determining the net amount actually available to the defendant from his accident reconstruction activities: Car and truck expenses, thirteen thousand one hundred ninety two ($13,192) dollars; insurance, four hundred seventy eight ($478) dollars; legal and professional services, five hundred forty seven ($547) dollars; office expense, two thousand two hundred sixty three ($2263) dollars, taxes and licenses, two hundred forty ($240) dollars; travel, nine hundred eighty seven ($987) dollars; meals and entertainment, eight hundred thirty two ($832) dollars; other expenses, three thousand three hundred forty three ($3343) dollars. These deductions total twenty one thousand eight hundred eighty two ($21,882) dollars. Id, Schedule C. In making this computation, the court has not deducted from the defendant's gross earnings, sums for depreciation, utilities, or amounts the defendant claimed for the business use of the home he occupies. The court has not considered the claimed-depreciation since, although allowed for tax purposes, it does not represent actual cash payments. The court has not allowed the claimed utilities or home use expenses since CT Page 9906 the defendant provided inadequate information to the court to warrant the reduction of his gross earnings by the amounts he claimed. As a consequence, the court finds that in 1995, the defendant had net earnings from his accident reconstruction business in the amount of eighteen thousand eight hundred sixty seven ($18,867) dollars. Combined with his gross retirement earnings for 1995, the defendant's total gross income for 1995 was fifty two thousand three hundred forty one ($52,341) dollars.
As a result of the further deductions claimed for depreciation and business use of his home, however, the defendant's taxable income from his business activities was reported, in 1995, to be one thousand eight hundred and twenty ($1820) dollars. The court has utilized this figure to calculate the defendant's Federal and State taxes as well as his Social Security payments. Based on a filing status of married filing separately and claiming one exemption with no itemized deductions, the defendant's taxes and Social Security payments are calculated as follows: Federal taxes, five thousand six hundred twenty four ($5624) dollars; State taxes, one thousand three hundred twenty two ($1322) dollars; Social Security payments, two thousand five hundred and sixty one ($2561) dollars. Subtracting these amounts from the defendant's actual gross employment and retirement earnings of fifty two thousand, three hundred forty one ($52,341) dollars results in a calculation that the defendant has annual after tax and social security earnings of forty two thousand eight hundred thirty four ($42,834) dollars. For purposes of calculating the defendant's child support obligation, the court has also considered that he pays, on a weekly basis, the sum of twenty seven ($27) dollars for his own health insurance, four dollars and seventy eight ($4.78) cents for the childrens' health insurance, and twenty three dollars and twenty six ($23.26) cents for child support relating to an earlier child support obligation for a child not issue of this marriage.[1]
While the plaintiff had employment with the State Police in 1979 and 1980, she was not employed outside the home for a substantial portion of the marriage. From her home, however, she has operated a dog hobby and craft business. Additionally, in 1995 she undertook part time employment. Based on all the evidence concerning the plaintiff's present and past employment, the court determines that her present employment-related activities yield her a weekly gross of two hundred ($200) dollars. Although the plaintiff claims child care expenses on her affidavit of one hundred and fifty ($150) dollars, the court, for purposes of calculating an appropriate child support payment has allowed one CT Page 9907 hundred ($100) dollars as a reasonable weekly child care expense. Application of these figures to the plaintiff, assuming that she files her State and Federal income taxes as a head of household claiming three exemptions, results in a total annual tax obligation to the plaintiff in the amount of fifty five ($55) dollars. Accordingly, for purposes of calculating her child support obligation, the plaintiff's weekly income is two hundred ($200) dollars with one ($1) dollar in taxes and one hundred ($100) dollars in child care expense.
The court finds, based on these calculations, that the defendant's net weekly income for purposes of calculating child support is seven hundred seventy three ($773) dollars while the plaintiff's net income is ninety nine ($99) dollars. As a result, the parties' total child support obligation is three hundred one ($301) dollars. Since the defendant's income represents eighty eight (88%) percent of the total and he makes a weekly payment of five ($5) dollars for the childrens' health insurance, his child support obligation is two hundred sixty one ($261) dollars a week, an amount which the court orders the defendant to pay. In addition, the court orders the defendant to maintain the plaintiff and the children on his existing health care and life insurance policies, and to pay one half the costs of any uninsured health care expenses reasonably incurred on behalf of the children.
The parties have agreed that the defendant's Motion to Modify contemplates that the court will make orders concerning the issue of alimony. Based on the criteria set forth in C.G.S. § 46b-83, and without regard to issues relating to the cause of the marital breakdown, the court orders the defendant to pay to the plaintiff, as alimony pendente lite the weekly sum of one hundred twenty five ($125) dollars. The plaintiff shall be solely responsible for the payment of her living expenses as well as any incidental expenses incurred on behalf of the children.
The court denies the defendant's request that the court modify its present orders concerning the payment of fees for the psychologist whom the children are seeing in conjunction with the parties' access dispute, as well as payment of fees for the children's representation in this matter, except that the plaintiff and the defendant shall share equally the costs of any sessions with Dr. Christiana and either or both the children without the presence of either parent. The defendant shall be solely responsible for payment of the fees for any sessions he has alone with Dr. Christiana or for any sessions in which he and either or CT Page 9908 both children meet with Dr. Christiana. Reciprocally, the plaintiff shall be solely responsible for the costs of any sessions she attends alone with Dr. Christiana or in the company of either or both children. In the event that Dr. Christiana conducts any joint session(s) in which both parents participate, they shall be equally responsible for such cost(s).
During the hearing on this matter, among the many issues raised by the parties was the plaintiff's claim that the defendant is in arrearage on account of present orders. The court finds the evidence inconclusive as to whether the defendant is current with respect to this court's previous orders. Accordingly, the court orders the plaintiff to submit to the defendant, within thirty days of the date of this Memorandum, a detailed itemization of her claims with respect to child support arrearages, including the defendant's obligations to pay certain expenses on behalf of the plaintiff and the children. The defendant, in turn, is ordered to provide to the plaintiff, within thirty days of his receipt of the plaintiff's itemized claims, such proof as he may have that he has paid the disputed expenses. In the event the parties are not able to come to an agreement with respect to any claimed arrearages, and once the plaintiff has fully complied with this order and given the defendant the required amount of time to reply, the plaintiff may reclaim her Motion for Contempt for further hearing.
Since the court perceives the entitlement of a parent to claim a child as a dependency exemption for taxation purposes as a property award, the court leaves that issue to the final hearing.
These orders are effective upon the filing of this Memorandum. Payments for support and alimony shall be by immediate wage withholding from the defendant's retirement income. In the event the State Police Retirement Fund will not deduct the entire amount of this order, the defendant shall pay the difference directly to the plaintiff by check, mailed by Friday of each week.
Bishop, J.